UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE COMPANY,          Civil Action No.

                          Plaintiff,

      -against-                                              **COMPLAINT**

STARR INDEMNITY AND LIABILITY
COMPANY,

                          Defendant.
-------------------------------------------------------------------------x
**M A D A M S/S I R S:**

          Plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty

Mutual"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against

defendant STARR INDEMNITY AND LIABILITY COMPANY ("Starr"), allege as follows:

                    **JURISDICTION AND VENUE**

          1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C.

§1332(a) by reason of the diversity of citizenship of the parties and the fact that the

amount in controversy exceeds the sum of $75,000 exclusive of costs.

          2.     At all times hereinafter mentioned, Liberty Mutual was, and still is, a

stock insurance company organized under the laws of the State of Wisconsin, with its

principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

          3.     At all times hereinafter mentioned, Liberty Mutual was, and still is, an

insurance company duly authorized to conduct business within the State of New York.

1

4.      Upon information and belief, at all times hereinafter mentioned, Starr was, and still is, a stock insurance company organized under the laws of the State of Texas, with its principal place of business located at 399 Park Avenue, New York, NY 10022.

5.      Upon information and belief, at all times hereinafter mentioned, Starr was, and still is, an insurance company duly authorized to conduct business within the State of New York.

## SUBSTANTIVE ALLEGATIONS

### A.      The Underlying Action

6.      On or about July 9, 2013, Marc Arnone and Catherine Arnone (the "Arnones") commenced an action entitled Marc Arnone and Catherine Arnone v. Weill Medical College of Cornell University and Tishman Construction Corporation of New York, Index No. 156210/13, which is pending in the Supreme Court of the State of New York, County of New York (the "Underlying Action").

7.      Weill Medical College of Cornell University ("Weill-Cornell") and Tishman Construction Corporation of New York ("Tishman") were each named as a defendant in the Underlying Action.

8.      In the Underlying Action, the Arnones allege that Weill-Cornell was and still is the owner of the premises located at 416 East 69th Street, Weill Cornell Medical Center, New York, New York (the "Premises").

9.      In the Underlying Action, the Arnones allege that Tishman was in the business of providing general contracting services and was the general contractor of the Premises

2

10.    In the Underlying Action, the Arnones allege that Tishman was and still is in the business of providing construction management services and was the construction manager of the Premises.

11.    In the Underlying Action, the Arnones allege that Weill-Cornell retained Tishman to act as general contractor and/or construction manager of the Premises.

12.    In the Underlying Action, the Arnones allege that Tishman entered into a subcontract with Allan Brightway Electric ("Brightway") to perform work, labor, and services at the Premises.

13.    In the Underlying Action, the Arnones allege that on October 4, 2012, while Mr. Arnone was lawfully upon the Premises as an employee of Brightway, he was caused to sustain serious and severe injuries.

14.    In the Underlying Action, the Arnones allege violations of the Labor Law of the State of New York and Industrial Code of the State of New York against Weill-Cornell and Tishman, and seek monetary damages for conscious pain and suffering, loss of enjoyment of life, medical expenses, past and future, lost wages and union benefits, past and future, and other damages.

15.    In the Underlying Action, the Arnones seek damages related to Mrs. Arnone's loss of support, services, love, companionship, affection, society, sexual relations, solace of Mr. Arnone, and her happiness in his society.

16.    Brightway was formally known as Petrocelli Electric ("Petrocelli").

3

17.     On or about July 8, 2010, Tishman, as the "Construction Manager", and Petrocelli, as the "Contractor", entered into a subcontract agreement relating to a construction project at the Premises (the "Tishman-Petrocelli Contract").

18.     Weill-Cornell is identified as the "Owner" in the Tishman-Petrocelli Contract.

19.     The Tishman-Petrocelli Contract defines Indemnitees as follows:

(iii) "**Indemnitees**" shall mean:

Tishman Construction Corporation of New York, Owner and their respective parent companies, corporations, members and/or partnerships and their owned, controlled, affiliated, associated and subsidiary companies, corporations, members, and/or partnerships and the respective agents, consultants, principals, partners, members, servants, officers, stockholders, directors and employees of each, and any other persons or entities that either Construction Manager or Contractor are required to indemnify pursuant to the Prime Contract.

20.     Regarding "Insurance", the Tishman-Petrocelli Contract provides, in relevant part, as follows:

**INSURANCE**

8. Unless otherwise provided for by the attached Insurance Rider, prior to commencement of any Work under this Agreement, and until completion and final acceptance of the Work, the Contractor and each of Contractor's subcontractors shall, at its own expense, maintain the following insurance on its own behalf and for the protection of the Owner, Owner's Lender, Construction Manager and all other Indemnitees named in this Agreement (hereinafter referred to as "Additional Insureds"):

(a) Commercial General Liability insurance, including, without limitation, products and completed operations and

4

containing no "X", "C", or "U" exclusions if excavation
and/or demolition is to be provided;

* * *

All such coverage shall have limits of no less than $5,000,000
per occurrence shall be provided and maintained by insurance
companies with AM Best ratings of not less than A- VIII, and
shall be in a form acceptable to Construction Manager.
Contractor shall, upon request, provide complete copies of all
such insurance policies, including all endorsements thereto to
Construction Manager.  All such insurance shall be provided
without deductibles or self-insured retentions.

Contractor shall deliver certificates of insurance satisfactory to
Construction Manager evidencing Contractor's procurement of
all required insurance within 3 days of execution of this
Agreement, and prior to the performance of any Work, which
certificate shall expressly identify the Additional Insureds as
additional insureds.

21.    The Tishman-Petrocelli Contract contains a rider entitled "Insurance

Rider", which provides, in relevant part, as follows:

## INSURANCE

* * *

Prior to commencement of any work under this Contract and
until all obligations under this contract are fulfilled, the
Contractor and each and every Subcontractor of the
Contractor shall, at its sole expense, maintain the following
insurance on its own behalf, and furnish to the Owner and/or
Construction Manager, certificates of insurance evidencing
same and reflecting the effective date of such coverage as
follows:

The term "Contractor" and/or "Subcontractor" as used in this
insurance rider, shall mean and include Contractors and
Subcontractors of every tier.

* * *

B. Commercial General Liability with a combined Bodily Injury and Property Damage limit of not less than TEN Million ($10,000,000.00) Dollars per occurrence

Coverage must include the following perils

1. Contractual Liability for liability assumed under this Contract and all other Contracts relative to the project.

2. Completed Operations/Products Liability with a six (6) year extension beyond completion and acceptance of the project.

3. Broad Form Property Damage

4. "XC&U" Perils, where applicable

5. Personal Injury Liability (A, B, & C)

6. Independent Contractors

7. Endorsement (G2010 11/85 or its equivalent) must be furnished in conjunction with the any certificate of Insurance provided, reflecting the inclusion of the interests of Tishman Construction Corporation of New York; and their respective parent companies, corporations and/or partnerships and their owned, controlled affiliated, associated and subsidiary companies, corporations, and/or partnerships and the respective agents; consultants, principals, partners, servants, officers, stockholders, directors and employees of each and all other indemnitees named in the Contract as Additional Insureds.

8. Coverage is to be endorsed to reflect that the insurance provided is to be primary for the Contractor, Owner, Construction Manager and all other indemnitees named in the Contract.

9. Coverage is to be provided on an "occurrence" basis with carriers licensed and admitted to do business in the State of New York or otherwise acceptable to the Owner and Construction Manager.

6

* * *

F. Umbrella Liability insurance policies should follow the form of the underlying primary insurance policies and provide the additional insureds essentially the same coverage on an excess basis afforded by the primary insurance programs.

G. The Contractor shall file certificates of insurance including additional insured endorsement CG2010 11/85 or its equivalent prior to the commencement of work and/or payment with the Owner and/or Construction Manager which shall be subject to the Owner and Construction Manager's approval of adequacy of protection and the satisfactory character of the Insurer.
In the event of failure of the Contractor to furnish and maintain said insurance and to furnish satisfactory evidence thereof, the Owner and/or Construction Manager shall have the right (but not the obligation) to take out and maintain the same for all parties on behalf of the Contractor who agrees to furnish all necessary information thereof and to pay the cost thereof to the Owner and/or Construction Manager immediately upon presentation of a bill.

22.    By Assignment of Trade Contract dated April 11, 2011, Petrocelli

assigned its rights and responsibilities in the Tishman-Petrocelli Contract to Brightway,

including any and all obligations related to insurance and indemnification.

**B.    The Starr Policy**

23.    Upon information and belief, Starr issued a policy of insurance

providing liability insurance coverage to Petrocelli and/or Brightway (the "Starr Policy").

24.    The Starr Policy was in effect on October 4, 2012.

25.    Weill-Cornell and Tishman qualify as additional insured under the

Starr Policy.

7

26.     The Starr Policy contains an applicable primary "Other Insurance"

provision.

**C.    Starr's Breach of its Duty to
       Defend in the Underlying Action**

27.     By letter dated August 26, 2013, Liberty Mutual tendered Weill-

Cornell's and Tishman's defense and indemnification in the Underlying Action to Starr.

28.     By letter dated October 29, 2013, Liberty Mutual re-tendered Weill-

Cornell's and Tishman's defense and indemnification in the Underlying Action to Starr.

29.     By email dated May 19, 2015, Liberty Mutual re-tendered Weill-

Cornell's and Tishman's defense and indemnification in the Underlying Action to Starr.

30.     By letter dated May 20, 2014, York Risk Services Group, Inc.

("York") responded to Liberty Mutual's tender of Weill-Cornell's and Tishman's defense

and indemnification in the Underlying Action to Starr.  In that letter, York took the

position that neither Weill-Cornell nor Tishman qualified as an additional insured under the

Starr PolicY.

31.     Neither York nor Starr has ever raised an exclusion or breach of a

policy condition as a basis for disclaiming coverage for Weill-Cornell or Tishman for the

claims alleged in Underlying Action.

32.     By letter dated July 13, 2015, Liberty Mutual, through its attorneys,

Jaffe & Asher LLP, re-tendered Weill-Cornell's and Tishman's defense and indemnification

in the Underlying Action to Starr.

33.     Liberty Mutual issued a Commercial General Liability policy, No.

TB2-611-259946-029, with a policy period of June 30, 2009 to July 1, 2014, to

Cornell University as the first Named Insured (the "Liberty Mutual Policy").

34.     Weill-Cornell qualifies as a Named Insured under the Liberty Mutual

Policy.

35.     The Liberty Mutual Policy contains an endorsement entitled "WRAP-

UP INSURANCE PROGRAM-AMENDMENT OF COVERAGE" (the "Wrap-Up

Endorsement"), which provides, in relevant part, as follows:

> A.     Section II – Who Is An Insured is amended to include
> as a Named Insured all contractors for whom any named
> insured has agreed by written contract prior to the loss to
> provide general liability coverage under a wrap-up insurance
> program for the "designated project" and for whom the
> "Wrap-Up Administrator" has created an enrollment record...

36.     Tishman qualifies as a Named Insured under the Liberty Mutual Policy

pursuant to the Wrap-Up Endorsement.

37.     Liberty Mutual has been providing and continues to provide Weill-

Cornell and Tishman with a defense in the Underlying Action pursuant to the Liberty

Mutual Policy.

38.     Regarding "Other Insurance", the Liberty Mutual Policy provides, in

relevant part, as follows:

> **4. Other Insurance**
>
> If other valid and collectible Insurance is available to the
> insured for a loss we cover under Coverages A or B of this
> Coverage Part, our obligations are limited as follows:

9

### a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

### b. Excess Insurance

(1) This insurance is excess over:

* * *

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and complete operations, for which you have been added as an additional insured by attachment of an edorsement.

39.     The Liberty Mutual Policy contains an applicable excess "Other Insurance" provision.

40.     Based on the "Other Insurance" provision in the Liberty Mutual Policy, the coverage provided by the Liberty Mutual Policy to Weill-Cornell and Tishman is excess to the coverage provided by the Starr Policy.

41.     As a result of Starr's breach of its duty to defend, Liberty Mutual has been forced to drop down and provide a defense to Weill-Cornell and Tishman for the Underlying Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

42.     Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" though "41" of this Complaint as if more fully set forth herein.

43.    Weill-Cornell and Tishman qualify as additional insureds under the Starr Policy for the claims alleged in the Underlying Action.

44.    Starr owes Weill-Cornell and Tishman a duty to defend and indemnify for the claims alleged in the Underlying Action.

45.    Although duly demanded, Starr has failed and refused to provide a primary defense and indemnification to Weill-Cornell and Tishman for the claims alleged in the Underlying Action.

46.    Liberty Mutual seeks a determination of its rights with regard to the Starr Policy, including a declaratory judgment that Starr was and is required to defend and indemnify Weill-Cornell and Tishman for the Underlying Action under the Starr Policy, and such coverage applies on a primary basis before coverage under the Liberty Mutual Policy applies to Weill-Cornell and Tishman.

47.    Liberty Mutual has no adequate remedy at law.

**AS AND FOR A SECOND CLAIM FOR RELIEF**

48.    Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" though "47" of this Complaint as if more fully set forth herein.

49.    As a result of Starr's failure to acknowledge that it owes a primary duty to defend Weill-Cornell and Tishman, Liberty Mutual has been required to pay for the Weill-Cornell's and Tishman's defense for the Underlying Action.

11

50.     As a result of Starr's failure to acknowledge its primary duty to defend the Weill-Cornell and Tishman for the Underlying Action, Liberty Mutual has incurred substantial attorneys' fees and other costs to defend Weill-Cornell and Tishman.

51.     Starr failed and refused to acknowledge its primary coverage obligation and to reimburse Liberty Mutual for costs incurred to defend Weill-Cornell and Tishman in the Underlying Action.

52.     As a result of the foregoing, Liberty Mutual is entitled to a money judgment against Starr in an amount equal to what Liberty Mutual has incurred and will incur to defend Weill-Cornell and Tishman in the Underlying Action, in an amount to be determined by the Court.

**WHEREFORE**, plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment as follows:

1.     On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and defendant STARR INDEMNITY AND LIABILITY COMPANY with respect to their liability insurance coverage obligations for Weill Medical College of Cornell University and Tishman Construction Corporation of New York for the Underlying Action, including a declaratory judgment that STARR INDEMNITY AND LIABILITY COMPANY is required to defend and indemnify Weill Medical College of Cornell University and Tishman Construction Corporation of New York for the Underlying Action, and such coverage would apply on a primary basis before coverage under the

12

Liberty Mutual Policy applies to the Weill Medical College of Cornell University and Tishman Construction Corporation of New York;

      2.    On the second claim for relief, a money judgment in favor of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and against defendant STARR INDEMNITY AND LIABILITY COMPANY, in an amount to be determined by the Court; and

      3.    Granting plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 1, 2015

                    Yours, etc.,

                    JAFFE & ASHER LLP

          By: _____
                    Marshall T. Potashner, Esq.
                Attorneys for Plaintiff
                LIBERTY MUTUAL FIRE
                INSURANCE COMPANY
                600 Third Avenue, 9th Floor
                New York, New York 10016
                (212) 687-3000